UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  10-80232-CV-COHN

Magistrate Judge Seltzer

ROYAL PALM PROPERTIES, LLC,

    Plaintiff,

vs.

PREMIER ESTATE PROPERTIES, INC.,
GERARD LIGUORI, JOSEPH LIGUORI, and
CARMEN D'ANGELO, JR.,

    Defendants.
_____/

**ORDER DENYING AMENDED MOTION FOR PRELIMINARY INJUNCTION**
**ORDER DENYING MOTION TO DISMISS AMENDED COMPLAINT**

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Amended Complaint [DE 21] and Plaintiff's Amended Motion for a Preliminary Injunction [DE 24]. The Court has carefully considered the motions, responses [DE's 30 and 32], and replies thereto [DE's 36 and 40], the evidence presented and arguments made at the hearing held on April 9 and 12, 2010, and is otherwise fully advised in the premises.

I.  BACKGROUND

The parties in this action are competitors in the real estate business in luxury homes in the east Boca Raton development of Royal Palm Yacht & Country Club.  On February 11, 2010, Plaintiff Royal Palm Properties, Inc. ("Plaintiff") filed its three-count Complaint seeking injunctive relief and damages in this court against Defendants Premier Estate Properties, Inc. ("Premier"), and its principals, Gerard Liguori, Joseph Liguori, and Carmen D'Angelo, Jr.  The Complaint included claims for violation of the

federal AntiCybersquatting Consumer Protection Act ("ACPA") related to Defendants use of internet domain names containing the mark "royalpalmproperties," unfair competition for misappropriation of trademark, and common law trademark infringement.  Defendants moved to dismiss the action for failure to state a claim, asserting that no valid trademark existed.

Plaintiff responded to the Motion to Dismiss by filing an Amended Complaint [DE 19].  The Amended Complaint added a second claim in Count II for violations of the ACPA and additional factual allegations.  Thus, the four claims in this action are as follows:  Count I -- ACPA for registering royalpalmproperties.net; Count II -- ACPA for registering royalpalmproperties. org; Count III -- unfair competition for misappropriation of trademark; and Count IV --  common law trademark infringement.

On March 3, 2010, Plaintiff filed a Motion for a Preliminary Injunction [DE 5].  After filing the Amended Complaint, Plaintiff filed an Amended Motion for Preliminary Injunction [DE 24].  The Amended Motion added to the initial motion by describing Defendants' conduct in continuing to register foreign domain names which included the mark "royalpalmproperties," despite a cease and desist request from Plaintiff.  Each side moved for a hearing on their respective motions.  The Court granted the motions and took evidence and heard the argument of counsel.

## II.  DISCUSSION

### A.  Motion to Dismiss Standard

Until the Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for

2

failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001). However, pursuant to Twombly, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Taking the facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). In Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009), the Supreme Court further stated that a court need not accept legal conclusions as true, but only well-pleaded factual allegations are entitled to an assumption of truth.

### B. Protectable Mark

Defendants argue in their Motion to Dismiss that the mark "Royal Palm Properties" is not protectable in the first place. The Eleventh Circuit has stated that as follows:

> The distinctiveness of the mark at issue refers to how easily customers

> identify petitioner's mark with the represented services. There are four categories of distinctiveness listed in ascending order of distinctiveness: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. The demarcation between each category is more blurred than it is definite. A term which suggests the basic nature of the service is generic and is typically incapable of achieving service mark protection because it has no distinctiveness. A descriptive term merely identifies a characteristic or quality of a service. Because a descriptive service mark is not inherently distinctive, it may be protected only if it acquires a secondary meaning. A suggestive term suggests the characteristics of the service "and requires an effort of the imagination by the consumer in order to be understood as descriptive." Because a suggestive service mark is inherently distinctive, no proof of secondary meaning is required for it to be protectable. An arbitrary or fanciful service mark is also inherently distinctive because the term bears no relationship to the service. Thus, such marks are protectable without proof of secondary meaning.

<u>Coach House Rest., Inc. v. Coach & Six Rests., Inc.</u>, 934 F.2d at 1559-60 (internal citations omitted); <u>St. Luke's Cataract & Laser Inst., P.A. v. Sanderson</u>, 573 F.3d 1186, 1208 (11th Cir. 2009).

Defendants argue that the mark "royal palm properties" is generic and therefore cannot be protected. Plaintiff counters that the mark is, at the least, descriptive (notwithstanding, Plaintiff reserves the right to show at trial that the mark is suggestive). As explained above, a descriptive mark must have secondary meaning to be protectable. The Eleventh Circuit has stated that four factors can be considered in determining whether a particular mark has acquired a secondary meaning: "(1) [T]he length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's ... business; and (4) the extent to which the public actually identifies the name with the plaintiff's [service]." <u>Investacorp, Inc. v.

Arabian Inv. Banking Corp., 931 F.2d 1519, 1525 (11th Cir.), cert. denied, 502 U.S. 1005, 112 S.Ct. 639 (1991) (footnotes omitted); Gift of Learning Found., Inc. v. TGC, Inc., 329 F.3d 792, 800 (11th Cir. 2003).

After hearing the arguments at the hearing, the Court concluded that Plaintiff has adequately plead secondary meaning in the Amended Complaint sufficient to survive a motion to dismiss under Twombly and Iqbal. See ¶¶ 11-14 [DE 19]. Plaintiff has pled more than conclusory allegations regarding the factors necessary to show secondary meaning. The Court therefore affirms its oral ruling that Defendant's Motion to Dismiss the Amended Complaint be denied.

### C. Preliminary Injunction Standard

To obtain a preliminary injunction, Plaintiff must establish the following four elements: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendants; and (4) granting the preliminary injunction will not disserve the public interest. Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir.1994). Because a "preliminary injunction is an extraordinary and drastic remedy," it is "not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites." Id. (quoting Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990)); see also McDonald's Corp. v. Roberts, 147 F.3d 1301, 1306 (11th Cir. 1998).

Turning to the merits of the causes of action, the Eleventh Circuit has stated that the claims for unfair competition for misappropriation of trademark and common law trademark infringement under federal law both hinge on the same issues of Plaintiff's proprietary interest in the mark in question and the likelihood of consumer confusion. Investacorp, 931 F.2d at 1521.  The elements of the claims under the ACPA are slightly different and do not necessarily hinge on the likelihood of consumer confusion. PetMed Express, Inc. v. MedPets.Com, Inc., 336 F. Supp. 2d 1213 (S.D. Fla. 2004). The Court therefore starts its analysis with the consumer confusion test.

### D.  Likelihood of Consumer Confusion

To determine the existence of consumer confusion, the Court considers the following factors:  (1) The distinctiveness of the mark at issue, (2) the similarity of the design, (3) the similarity of the service, (4) the similarity of service outlets, (5) the similarity of customers, (6) the similarity of advertising media utilized, (7) the defendant's intent, and (8) any actual confusion.  Coach House Rest., Inc., 934 F.2d at 1561.  In this action, the parties primarily litigated the distinctiveness issue.

#### 1.  Distinctiveness

As discussed above in the context of deciding Defendant's motion to dismiss, the issue on distinctiveness of the mark is whether "RoyalPalmproperties" is more than a generic mark.  However, the standard the Court must now use changes from Plaintiff merely stating a claim to Plaintiff showing a substantial likelihood of success in proving

6

the distinctiveness of the mark.

### i.  Generic versus Descriptive Marks

Defendant argues that because "Royal Palm" is simply a geographic term and "properties" is a generic term, Plaintiff's mark is merely generic.  Plaintiff argues that the mark is descriptive and has obtained secondary meaning.  "A generic term is one that refers to the genus of which the particular product is a species."  Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985).  "A 'merely descriptive' mark, in contrast, describes the qualities or characteristics of a good or service, and this type of mark may be registered only if the registrant shows that it has acquired secondary meaning, *i.e.,* it 'has become distinctive of the applicant's goods in commerce.'  Id. (citations omitted).  "When used to describe a product, [merely descriptive marks] do not inherently identify a particular source, and hence cannot be protected."  Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992).

Defendants reply principally upon Arizona Int'l Ltd. v. Merrill Lynch Realty Operating Partnership, Ltd., 1991 WL 407023 (D. Ariz. 1991), wherein the district court granted summary judgment because the mark "Arizona realty" was generic, concluding that "these words refer to property or realty services in or associated with Arizona." 1991 WL 407023, *1.  Defendants also rely on World Market Center Venture, LLC v. Ritz, 597 F. Supp. 2d 1186, 1191 (D. Nev. 2009), which held in dicta that the terms "market" and "Las Vegas" in combination was generic and could not be used exclusively by anyone.  The court denied a preliminary injunction in that case, though the decision was based upon facts distinguishable from the present case, including

7

dissimilar businesses (hotel links website versus showcase of home and hospitality furnishings to wholesalers) and registration of a domain name prior to Plaintiff's use of the mark in question.  Id. at 1190.

Defendants assert that geographic terms are not entitled to protection under Florida law.  Great Southern Bank v. First Southern Bank, 625 So.2d 463, 466 (Fla. 1993).  Because Plaintiff is attempting to use the geographic term "Royal Palm" and the generic term "properties" in a world-wide marketplace given the internet advertising that both Plaintiff and Defendants utilize to attract customers from outside the United States, Defendants argue that the mark "Royal Palm Properties" cannot be protected.

Plaintiff asserts that the Florida Supreme Court held in Great Southern Bank that geographic terms are descriptive.  However, it appears that the Court considered geographic terms as a separate category to generic and descriptive, concluding that none of these three categories could be used exclusively by one person.  625 So. 2d at 466.  The Court's actual holding was that the mark "First Southern Bank" is "not entitled to protection without proof of having acquired a secondary meaning."  Id.

The Court concludes that the mark "Royal Palm Properties" is more than generic and is marginally descriptive.[1]  The combination of the geographic term "Royal Palm"

---

[1] Although Plaintiff stipulated in its amended motion for preliminary injunction and in its opposition to Defendants' motion to dismiss that its mark is at most descriptive, reserving the right to show at trial that the mark is suggestive, in its reply memorandum it now asserts that the mark may be found to be suggestive.  Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Amended Complaint at 3, n.2 [DE 30]; Plaintiff's Memorandum of Law in Support of Plaintiff's Amended Motion for Preliminary Injunction at 10 [DE 25].  The Court concludes that even if Plaintiff is allowed to go back on its stipulation, Plaintiff has not met its burden to show that the mark "Royal Palm Properties" is suggestive.

with the otherwise generic term "properties," in the context of providing real estate services, is descriptive. Plaintiff must then show that the mark has obtained secondary meaning.

### ii) Secondary Meaning

The Eleventh Circuit has held that:

> Secondary meaning is the connection in the consumer's mind between the mark and the provider of the service. Plaintiff has the burden of sustaining a high degree of proof in establishing a secondary meaning for a descriptive term. This requisite high degree of proof must be considered by the court when ruling on a motion of summary judgment. Absent consumer survey evidence, as is the case here, four factors can be considered in determining whether a particular mark has acquired a secondary meaning: (1) [T]he length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's ... business; and (4) the extent to which the public actually identifies the name with the plaintiff's [service].

Investacorp, 931 F.2d at 1525 (footnotes omitted); Gift of Learning Found., Inc. v. TGC, Inc., 329 F.3d 792, 800 (11th Cir. 2003); see also Popular Bank of Florida v. Banco Popular de Puerto Rico, 9 F. Supp. 2d 1347, 1357 (S.D. Fla. 1998).[2]

In Popular Bank the court granted a preliminary injunction to plaintiff after concluding that based upon "plaintiff's uninterrupted and exclusive use of the mark for a substantial length of time [approx. 19 years], its promotion and advertising, the

---

[2] "To prove secondary meaning, the plaintiff must demonstrate that the primary significance of the term in the minds of the consuming public is not the product but the producer. . . . Secondary meaning exists if a substantial number of existing or prospective customers understand the designation when used in connection with a business to refer to a particular person or enterprise. If a trade name has not acquired secondary meaning, the purchaser will not make an association with a particular producer and thus will not be misled by an identical or similar mark." Popular Bank of Florida, 9 F. Supp. 2d at 1357 (Citations omitted).

consumer confusion associated with the infringing use, and the testimony of plaintiff's expert," that plaintiff had met its burden to show secondary meaning. Popular Bank, 9 F.Supp.2d at 1358. In Investacorp, the Eleventh Circuit affirmed the grant of summary judgment to a defendant, upon a record in which the plaintiff had used the mark for five years prior to defendant's use (1978-1983), had spent only about $100 per month on advertising, and had little evidence that the public actually identified the marks with plaintiff's business. 931 F.2d at 1525-26. Of particular relevance to the case at bar, the Court stated that "although instances of consumer confusion are probative of secondary meaning, the few isolated instances cited by appellant are not adequate to present a genuine issue of material fact." Id. at 1526.

  Defendants argue that Plaintiff has completely failed to meet its burden to show secondary meaning, including a concession in the briefs by Plaintiff that it had no evidence of actual confusion, despite the registration of the first domain name by Defendants three years ago. In arguing that its evidence is sufficient, Plaintiff principally relies upon unpublished decisions for the proposition that Plaintiff need not have evidence of whether the public identifies the name with Plaintiff's product. E.R. Squibb & Sons, Inc. v. Princeton Pharm., Inc., 1990 WL 272707 (S.D. Fla. 1990);[3] Council of Better Business Bureaus, Inc. v. Better Business Bureau of S. Fla., Inc., 1978 WL 21729 (S.D. Fla. 1978), vacated on consent of parties, 1980 WL 581291 (S.D. Fla. 1980). The Court will not follow these decisions but will analyze all four

---

[3] The Squibb case concerned the registered trademark "Princeton Pharmaceutical Products.

factors identified by the Eleventh Circuit.

Plaintiff has shown that it has used the "Royal Palm Properties" mark for ten years in its business of providing real estate services to the RPYCC community. Testimony of David Roberts. In addition to the length and manner of its use, Plaintiff has shown that it has spent over $1 million in advertising and promotion costs to this community. See Plaintiff's Exhibits 1, 2 and 3. However, Plaintiff's evidence regarding the remaining two factors, the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's business and the extent to which the public actually identifies the name with the plaintiff's service, are lacking in the context of showing a substantial likelihood of success on proving secondary meaning.

While the Court acknowledges that the case law from the Eleventh Circuit allows secondary meaning to be shown by circumstantial evidence, the Court is not convinced that Plaintiff has met its burden to show a substantial likelihood of proving secondary meaning in the complete absence of any evidence that the public identifies "Royal Palm Properties" with the real estate services provided by Plaintiff.[4] The hearsay evidence introduced through the testimony of David Roberts that members of the public called Plaintiff's office asking about the status of calendars or promotional items published by

---

[4] Plaintiff states that it expects to present such consumer evidence in a final hearing in this case but suggests a lower evidentiary burden should be used at this preliminary injunction. The Court assumes that Plaintiff's suggestion refers to the use of hearsay evidence, rather than a lessening of the substantial likelihood of success standard. The Court notes that Defendant did not object at the preliminary injunction hearing to Mr. Roberts' hearsay testimony of what members of the public told him.

11

Plaintiff for the RPYCC development might be circumstantial evidence of Plaintiff's efforts to promote a conscious connection with the public's mind between the name and Plaintiff's services, but it could also just be the fact that the public likes the free calendars.  There remains no evidence that the public associates "Royal Palm Properties" with Plaintiff's business services.

Given that the mark in question is barely descriptive on the continuum of categories of trademark distinctiveness, the Court cannot ignore this absence of evidence on the fourth factor of the extent to which the public actually identifies the name with the Plaintiff's service, particularly in the context of the preliminary injunction standard of substantial likelihood of success on the merits.  Therefore, the Court concludes that Plaintiff has not shown secondary meaning for purposes of obtaining a preliminary injunction.

### 2.  Similarity of Mark, Services, Customers and Advertising

Although the Court could end its decision here, the Court cannot ignore Plaintiff's argument that Defendants have intentionally used Plaintiff's exact service mark in registering domain names and directing internet users directly to Defendant's website.  Returning to the factors for the likelihood of consumer confusion, it is true that the parties' services, offices, customers and advertising are all similar, in that the parties compete in the same small development in east Boca Raton providing the exact same service to a similar customer base using similar advertising.  Plaintiff asserts that it clearly was using the mark "royal palm properties" since 2000, before Defendant

registered the domain names.  Plaintiff has shown a substantial likelihood of success as to these factors.

### 3.  Defendants' Intent

Plaintiff asserts that Defendants' registration of domain names, royalpalmproperties.net and .org, along with registration of various foreign country domain name of "royalpalmproperties" evidences an intent to specifically confuse consumers by using Plaintiff's exact service mark.  Plaintiff did provide hearsay evidence through David Roberts that members of the public have told him that they were misdirected to Premier's website when searching "Royal Palm Properties."

Defendants dispute the contention of bad faith given the lack of distinctiveness of Plaintiff's mark.  Rather, Defendants argue that Premier also provides real estate services to the luxury neighborhood of Royal Palm Yacht and Country Club ("RPYCC") and has done so since 1993.  Testimony of Gerard Liguori; Defendants' Exhibits 6 through 10.  In and around 2005 to 2007, Premier invested funds to acquire domain names to advertise its services to potential consumers around the world looking to buy property in RPYCC.  Id.  Mr. Liguori testified that Defendants had their own independent business reasons to acquire the domain names at issue, separate and apart from any intent to redirect business away from Plaintiff.  Defendants further assert that the domain names direct traffic to Premier's website, which prominently displays its own corporate name, "Premier Estate Properties," thus eliminating the possibility of consumer confusion with Plaintiff's website.  Defendants also argue that Plaintiffs' intent in filing this lawsuit is merely to eliminate competition in RPYCC real estate

13

sales, as Plaintiff knows it cannot federally register the trademark due to its generic nature and the existence of dozens of other Florida companies using "Royal Palm" in their businesses.  Exhibit B to Affidavit of Gerard Liguori [DE 32-3].

### 4.  Actual Confusion

Plaintiff concedes in its motion that it has no evidence to date of actual consumer confusion.  Plaintiff's Memorandum at p. 14 [DE 25].  However, at the hearing, David Roberts did testify regarding customers who told him that they were misdirected to Defendant's website.  While this may be evidence of cyber-squatting, it is not evidence of actual confusion as the consumers knew they were on a competitor's website.

### 5.  Conclusion as to Unfair Competition and Infringement Claims

Upon consideration of all the factors for consumer confusion, the Court concludes that Plaintiff has failed to show a substantial likelihood of success as to the lack of distinctiveness of the mark, Defendant's intent, and actual confusion. Therefore, the Court denies the remedy of a preliminary injunction on the claims of unfair competition for misappropriation of trademark or common law trademark infringement.

### E.  Anti-Cybersquatting Consumer Protection Act

The cyberpiracy prevention section of the Lanham Act, 15 U.S.C. § 1125(d) (also known as the Anti-cybersquatting Consumer Protection Act), makes a person liable for the bad faith intent to profit from a protected mark by using a domain name

that is identical or confusingly similar to the owner of the mark.  PetMed Express, Inc. v. MedPets.Com, Inc., 336 F. Supp. 2d 1213 (S.D. Fla. 2004).  "Liability for federal cyberpiracy occurs when a plaintiff proves that (1) its mark is a distinctive or famous mark entitled to protection, (2) the defendant's domain names are identical or confusingly similar to the plaintiff's marks, and (3) the defendant registered the domain names with the bad faith intent to profit from them."  PetMed Express, 336 F.Supp.2d at 1218; Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 Fed. App'x 252, 256 (11th Cir. 2006) (J. Carnes).

The element of the anti-cybersquatting claim that a mark is distinctive or famous is similar to the consumer confusion factor discussed above that a plaintiff must show that the mark is either inherently distinctive or is a descriptive mark that has acquired secondary meaning.  Shields v. Zuccarini, 254 F.3d 476, 482 (3rd Cir. 2001).[5]  Plaintiff's reliance on Victoria's Cyber Secret Ltd. v. V Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1349 (S.D. Fla. 2001), is misplaced, as there was no question in that case that the "Victoria's Secret" mark was arbitrary for Lanham Act purposes and famous for ACPA purposes.  Therefore, the Court incorporates its prior analysis in the Section II.D.1 of this order and concludes that Plaintiff has failed to show a substantial likelihood of success that it can prove that the mark is distinctive.[6]

---

[5] Although Shields quotes 15 U.S.C. § 1125(c)(1), the ACPA is codified in § 1125(d).  Though §1125(c)(2) contains a definition for famous, there is no part of that § 1125 that defines "distinctive."  Therefore, it is safe to conclude that the case law used to interpret other sections of the Lanham Act may be used to interpret the ACPA.

[6] Plaintiff has proven the second element that the Defendants' domain names are identical to the plaintiff's marks.  As to the third element regarding whether

### F.  Other Preliminary Injunction Elements

Because Plaintiff has failed to show a substantial likelihood of success on the merits of its claims, the Court need not discuss the remaining elements of a preliminary injunction.  The Court does note that the simple fact that Defendants have voluntarily stopped use of the domain names in question does not mean that Plaintiff cannot show irreparable injury, given the evidence that it would be easy for Defendants to start re-using the domain names.  Because Plaintiffs have not shown infringement of a descriptive service mark with secondary meaning, the Court need not presume irreparable injury.

### III.  CONCLUSION

The Court concludes that Plaintiff has failed to meet its burden to obtain a preliminary injunction.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Amended Complaint [DE 21] is hereby **DENIED**;

2. Plaintiff's Amended Motion for a Preliminary Injunction [DE 24] is hereby **DENIED**;

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 15th day of April, 2010.

JAMES I. COHN
United States District Judge

copies to:
counsel of record on CM/ECF

---

defendant registered the domain names with the bad faith intent to profit from them, the Court does not reach the question.  At trial, though Plaintiff may be able to prove several of the factors listed in § 1125(d)(1)(B)(i), the safe harbor in § 1125(d)(1)(B)(ii) will be an issue.

16